MACK FINANCIAL CORPORATION *v.*
Donald CHRESTMAN d/b/a WHEATLEY DIESEL
SERVICE and Danny GOODMAN

CA 80-157                                   605 S.W. 2d 749

Court of Appeals of Arkansas
Opinion delivered September 24, 1980
Rehearing denied October 29, 1980

*Wright, Lindsey & Jennings*, for appellant.

*Fletcher Long, Jr., P.A.*, for appellee Chrestman.

*Daggett, Daggett & Van Dover*, for appellee Goodman.

MARIAN F. PENIX, Judge. This is an appeal from a directed verdict in favor of appellees on the ground the Circuit Court action was a collateral attack on the St. Francis Chancery Court order of April 12, 1979. The court denied the appellant's motion for summary judgment and its motion for directed verdict. From these denials the appellant appeals.

In July 1977 one Fuentes purchased a 1973 International Harvester tractor model truck from Mack Trucks Inc. in Delran, New Jersey. Under terms of a security agreement Fuentes agreed to pay $19,012.32 in 36 monthly installments of $528.12 beginning August 8, 1977. The security agreement

was assigned to MFC, appellant. The lien was noted on the New Jersey certificate of title. In August 1978 George Largo, son-in-law of Fuentes, the owner, left the truck with appellee Chrestman in Wheatley, Arkansas to be repaired. Fuentes has failed to make the monthly payments due on December 8, 1978 and every month thereafter. On December 12, 1978 Chrestman sent a certified letter to Largo notifying him that an action for the repair bill would be filed. This letter was returned. On February 22, 1979, a complaint to establish a lien and foreclose same was filed in St. Francis Chancery Court by Chrestman. A warning order was published February 27, 1979, March 6, 1979, March 13, 1979 and March 29, 1979. MFC alleges that on or before April 7, 1979 agents of MFC notified the repairman Chrestman of its interest in the truck. Robert Thornton was retained by the appellant to investigate the truck at Chrestman's shop at Wheatley, Arkansas. Thornton testified he asked Chrestman for a copy of his repair bill on the truck on April 7, 1979. Chrestman refused. On March 29, 1979 Chrestman received a judgment in St. Francis Chancery Court, and on April 12, 199, the court ordered the sale of the truck to Goodman, appellee, who was issued an Arkansas Certificate of Title. The MFC lien was not noted on the Arkansas title. This was five days after Thornton made a request on Chrestman for a repair bill and informed Chrestman of appellant's vendor's lien. Chrestman denied being contacted about the vendor's lien until after the order of sale. The appellant made a written demand on Chrestman for possession of the truck on April 19, 1979.

On August 1, 1979 MFC sued to replevy. MFC moved for a summary judgment for possession of the truck on the grounds (1) it was holder of a vendor's lien which was entitled to priority over the lien of a repairman and (2) that its priority extended to purchaser Goodman under Ark. Stat. Ann. Sec. 75-160(c). On December 10, 1979 the court ordered MFC was entitled to a default judgment against Fuentes. The court denied MFC's motion for a summary judgment. After MFC rested its case the trial court directed a verdict in favor of Chrestman and Goodman. This verdict was on the ground the circuit court action was collateral at-

tack on the St. Francis Chancery Court Order of Sale. MFC appeals.

Ark. Stat. Ann. Sec. 51-412:

The [repairman's] lien herein provided for shall take precedence over and be superior to any mortgage or other obligation attaching against said property in all cases where the holder of such mortgage or other obligation shall permit such property to remain in the possession and be used by persons owing and bound for the amount thereof; provided, that the lien herein provided for shall be subject to the lien of a vendor of automobiles, trucks, tractors, and all other motor propelling conveyances retaining title therein, for any claim for balance of purchase money due thereon; . . .

This is the statute under which Chrestman claimed his interest in the truck and under which he foreclosed. MFC argues they have priority due to the exception for a vendor's lien.

Ark. Stat. Ann. Sec. 75-160 provides for MFC's lien priority over the present possessor, Goodman.

(c) If a vehicle is subject to a security interest when brought into this State, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:
. . . 2. If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply: (a) If the name of the lien holder is shown on an existing certificate of title issued by the jurisdiction, his security interest continues perfected in this State.

The truck was purchased by Fuentes in the State of New Jersey. A security agreement was executed, value was given, and the debtor took possession of the collateral, the truck. The creation and attachment of the security interest is

governed by New Jersey law. N. J. Stat. Ann. § 12A:9-204 states:

> (1) A security interest cannot attach until there is agreement . . . that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

A security agreement was entered into evidence. The debtor, Fuentes, signed the agreement, value was given, and the debtor had rights in the collateral. The attachment took place in New Jersey. Perfection is also governed by New Jersey law. Ark. Stat. Ann. § 85-9-103 states:

> (4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state *or any other jurisdiction* which requires indication on a certificate of title of any security interest in the property as a condition of perfection, *then the perfection is governed by the law of the jurisdiction which issued the certificate*.

In order to perfect this security agreement, New Jersey requires:

> (3) The filing provisions of this Chapter do not apply to a security interest in property subject to a statute . . . (b) of this state which provides for a central filing of, or which requires indication on a certificate of title of, such security interests in such property. N.J. Stat. Ann. § 12A:9-302.

New Jersey law requires the notation of a security interest on the certificate of title.

> If . . . in connection with such sale [of a used motor vehicle], a security interest is taken or retained by the seller to secure all or a part of the purchase price of the motor vehicle, or is taken by a person who by making an advance or incurring an obligation gives value to enable the purchaser to acquire rights in the motor vehicle, the

name and the business or residents address of the secured party or his assignee shall be noted on the certificate of ownership. N.J. Stat. Ann. § 39:10-9

Therefore, under New Jersey law, the security interest of MFC was perfected by the notation on the certificate of ownership. Pursuant to Ark. Stat. Ann. § 85-9-103, this perfection continues in Arkansas.

The next issue we must deal with is whether MFC's perfected security interest has priority over the statutory repairmen's liens. Ark. Stat. Ann. § 85-9-310 provides:

> Priority of certain liens arising by operation of law — When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

There is no question Chrestman, in the ordinary course of his business provided services and materials to the truck which was subject to a security interest. When these services and materials were not paid for, the truck, which was in the possession of Chrestman, became subject to a repairman's lien pursuant to Ark. Stat. Ann. § 51-412. This lien is statutory. *Bond* v. *Dudley and Moore*, 244 Ark. 568, 426 S.W. 2d 780 (1978). Accordingly, § 85-9-310 provides this lien is superior to any other lien unless the statute creating the lien expressly provides otherwise. Ark. Stat. Ann. § 51-412, quoted above, allows priority for "the lien of a vendor of automobiles, trucks, tractors, and all other motor propelling conveyances retaining title therein, for any claim for balance of purchase money due thereon."

We need not decide whether Section 51-412 requires an assignee, in this case MFC, be given priority over a repairman's lien. The repairman's lien involved in this case was extinguished by the Chancery Court Order and Sale. Goodman, the present possessor and buyer at the judicial

sale, acquired only the interest which Fuentes had. Fuentes' interest was subject to the lien of MFC.

While there is no comparable case in Arkansas, two Georgia cases dealt with a similar problem. In *Capital Automobile Company* v. *Continental Credit Corporation*, 117 Ga. App. 451, 160 SE 2d 836 (1968) the Georgia Court of Appeals held that a Texas certificate of title on which the plaintiff's lien was noted received priority over the holder of a subsequently issued Georgia certificate of title on which no liens were noted. The court construed a statute which is identical to Ark. Stat. Ann. § 75-160(c)(2)(a) and held the lien holder could foreclose its mortgage on the automobile against the purchaser who claimed under the Georgia certificate of title.

Again, in *Kinder* v. *General Motors Acceptance Corp.*, 117 Ga. App. 610, 161 SE 2d 372 (1968) the Georgia Court of Appeals affirmed the granting of summary judgment in favor of a plaintiff finance company. The court stated that the finance company had noted its lien on a Texas certificate of title and that the security interest had attached in Texas. Under Georgia law, therefore, the interest of plaintiff "continued perfected in Georgia and is valid against the subsequent transferee." The fact that the lien holder's name was not noted on the subsequently issued Georgia certificate of title was of no importance. The priority of the finance company was unqualifiably established by law; therefore, the plaintiff could foreclose its lien as a matter of law.

The appellant next contends it was error for the Circuit Court to dismiss its suit on the ground the action was collateral attack on the St. Francis Chancery Court Order of April 12, 1979.

The Chancellor's Order of April 12, 1979 required the sale of the Fuentes vehicle in order to satisfy the lien held by the repairman, Chrestman. The record shows the only parties to that suit were Chrestman, as the repairman, and Fuentes. Warning orders were issued with Fuentes as the named defendant. An attorney ad litem was appointed for Fuentes. MFC was never made a party to this suit. They received no notice., MFC has never been afforded its day in

court. Without being a party to this suit, there was no way MFC could have appealed the order of April 12, 1979 and asked that they be given possession of the truck. The proceeding in Lee County Circuit Court is not a collateral attack on the St. Francis Chancery Court Order. The judicial sale extinguished Chrestman's materialman's lien — but not MFC's vendor's lien. The question of the vendor's lien was never resolved in the Chancery Court action. No action involving the vendor's lien was ever taken in the Chancery Court. It is no more than the appellant MFC's attempt to assert its interest against the vehicle.. MFC's interest has not yet been dealt with. See *Quattlebaum* v. *Gray*, 252 Ark. 610, 480 SW 2d 339 (1972); *Carpenters Local Union No. 2746* v. *Turney Wood Products, Inc.*, 289 F. Supp. 143 (W.D. Ark. 1968).

We find it was error for the Circuit Court to have granted a directed verdict for the defendants. We remand to the Circuit Court with directions to enter a Summary Judgment in favor of MFC.

Reversed and Remanded.

NEWBERN, J. concurs.

DAVID NEWBERN, Judge, concurring. I agree with the result reached by the majority, but I feel two points have not been addressed sufficiently. First, the appellee Chrestman argued that the chancery court's action was "in rem." The sense of this argument is that not only are the parties to the suit bound by its result, but so are all other persons who might have an interest in the property which was the subject matter of the suit. The logical extension of that argument is that any attack in a second forum upon title to the property determined in such a proceeding, no matter by whom the attack is mounted, becomes a "collateral attack."

For the proposition that the chancery court's action was "in rem," the appellee cites only Ark. Stat. Ann. § 51-404, *et seq.* (Repl. 1971), with particular emphasis on § 51-411. Having examined those sections, I do not find that they specifically confer or contemplate "in rem" jurisdiction. Unlike an action to quiet title to property, the chancery court proceeding

was simply one to establish and foreclose a lien. It did not purport to do away with other liens which might have been outstanding.

Secondly, I wish to point out we are advisedly saying an assignee of a vendor's lien stands in the position of the vendor. Although our statute, Ark. Stat. Ann. § 51-412 (Repl. 1971), does not "expressly provide" that an assignee of the vendor shall have priority over the repairman, we are not dealing with the priority problem. Thus, without predicting its effect in priority cases, we are saying that the express provision in favor of the vendor is sufficient to include the vendor's assignee. See, Nickles, *Creditors' Provisional Remedies and Debtors' Due Process Rights: Statutory Liens in Arkansas*, 32 Ark. L. Rev. 184, note 136 (178).